# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by and between Thomas Philipp-Edmonds ("Plaintiff") and Defendants Ahsan Sheikh and Perfect Pizza Pie, Inc. ("Defendants"). Plaintiff and Defendants may also sometimes be collectively referred to as the "Parties."

The Parties, now desiring to enter into a Settlement Agreement and Release, do hereby settle and resolve all claims raised in Plaintiff's Complaint according to the following terms:

WHEREAS, Plaintiff has filed a Complaint for Unpaid Wages in *Philipp-Edmonds v. Perfect Pizza Pie, Inc.*, No. 3:20-cv-00329, Doc. 1. (M.D. Fl. March 31, 2020) asserting Defendants violated Plaintiff's federal and state wage and hour rights, specifically, failing to properly reimburse Plaintiff for work-related expenses and therefore failing to properly pay minimum wage; and

WHEREAS, Defendants deny any liability to Plaintiff; and

WHEREAS, Plaintiff and Defendant now desire to fully resolve and settle the matters raised in Plaintiff's Complaint and release and discharge Defendants from all claims which presently exist or may exist in the future arising out of or relating to the assertions in Plaintiff's Complaint;

WHEREAS, the Effective Date of the Agreement is upon execution by the Plaintiff;

NOW, THEREFORE, in consideration of the mutual promises, covenants, and undertakings set forth below, and other good and valuable consideration, the receipt and sufficiency of which each of the Parties hereby acknowledge, Plaintiff and Defendants agree as follows:

### A. The Company's Promises to Plaintiff

In consideration for Plaintiff's execution of this Agreement, Defendants promise to make a Total Settlement Payment in the total gross amount of $33,000.00 to be distributed as explained below. Defendants agree to the pay the total sum listed above within 10 calendar days of Plaintiff filing a Joint Motion for Settlement Approval. Plaintiff will file a Joint Motion for Settlement Approval in the United States District Court for the Middle District of Florida no later than June 12, 2020. Plaintiff's Counsel will undertake the drafting and filing of the Joint Motion.

1

The Total Settlement Payment means the total payments required of the Company under this Agreement, inclusive of attorneys' fees and costs, which shall be distributed by the terms of this Agreement as follows:

1. This Total Settlement Payment will be distributed as follows:

    (a) For alleged unpaid wages, Defendants shall issue Plaintiff a check payable to Thomas Philipp-Edmonds in the amount of $11,466.67 less applicable withholding. Defendants shall issue an IRS Form W-2 to Plaintiff in connection with this payment.

    (b) For alleged unpaid non-taxable expense reimbursements, and half of this check will be treated as damages. Defendants shall issue Plaintiff a check payable to Thomas Philipp-Edmonds in the amount of $11,466.67.

    (c) One check made payable to Biller & Kimble, LLC in the amount of $10,066.66, for attorneys' fees and expenses. Defendants shall issue a Form 1099 to Biller & Kimble, LLC for this payment.

2. Payment to Plaintiff of the Consideration set forth in Section 1 of this Agreement is due within 10 calendar days of Plaintiff filing a Joint Motion for Settlement Approval. Payment to Plaintiff's Counsel for fees and expenses will be due within 10 days of the Court's approval of this settlement. Should the Court refuse to approve this settlement, Plaintiff is required to return the Total Settlement Payment to Defendants' within 10 days of the resolution of the parties' Joint Motion for Settlement Approval.

### B. Plaintiff's Promises to The Company

In consideration of the payments made to the Plaintiff as set forth above, which Plaintiff acknowledges constitute good, sufficient, and valuable consideration, over and above any consideration to which Plaintiff is otherwise entitled, Plaintiff agrees to and promises the following:

3. Except for the obligations created by this Agreement, Plaintiff hereby fully releases and discharges Defendants from any and all claims, demands, causes of action, and liabilities, known or unknown, which Plaintiff ever had, claimed to have, or now has, regarding Plaintiff's alleged claim for unpaid wages under the Fair Labor Standards Act and Florida state wage laws, Florida Constitution, Art. X, §24, as amended, up to and including May 15, 2020, arising out of the same facts that were the subject of the Complaint.

4. Released Parties include:

    (a) Perfect Pizza Pie, Inc.;
    (b) Ahsan Sheikh;
    (c) Company officers and employees;
    (d) Each of their past, present, and future parents, franchisor, subsidiaries, divisions, partnerships, affiliates, insurers, etc.;
    (e) Each of their past, present, and future owners, directors, officers, trustees, fiduciaries, shareholders, stockholders, administrators, agents, representative employees, partners, members, associates, attorneys and trusts created by or for their benefit; and
    (f) The predecessors, successors, and assigns of each of the foregoing persons and entities.

5. Plaintiff waives any right to recover in any proceeding based in whole or in part on claims released by Plaintiff in this Agreement. This includes Plaintiff waiving any right to recover from any proceeding before or brought by any federal, state, or local agency.

6. No Claim for Leave or Compensation: Plaintiff confirms that Plaintiff has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which Plaintiff is entitled, except as provided by this Agreement. Plaintiff understands and acknowledges that Plaintiff is not entitled to any severance benefits pursuant to any severance policy or plan. This Agreement does not, however, supersede any retirement income benefit to which Plaintiff is eligible.

7. Satisfaction of All Obligations: Plaintiff agrees that all obligations of Perfect Pizza Pie, Inc. and the other Released Parties under any and all plans, agreements, policies, and/or practices have been satisfied or exceeded by the payments described in Section A, above.

8. Non-Disparagement: Plaintiff and Defendants agree that neither party will make any statement disparaging the other party or which may negatively reflect upon the business practices or character of the other party or any related individual or entity. If inquiry is made of Defendants about Plaintiff's employment, they will provide only Plaintiff's dates of employment and last position held.

### C. Miscellaneous Terms and Provisions Agreed to by the Parties

In exchange for the promises made by and to Plaintiff and the Defendants, they mutually agree to the following terms and provisions:

9. Enforcement: Either party may enforce the Agreement in accordance with the arbitration agreement entered by the Parties, and according to the American Arbitration

3

Association Employment Arbitration Rules and Procedures. This Agreement may be used in a subsequent proceeding to enforce its terms. In the event Defendants fail to pay in accordance with the terms of this Settlement Agreement, Plaintiff shall be entitled to reasonable attorneys' fees and costs associated with such enforcement action from Defendants.

10. Severability: Should any provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall not be deemed to be a part of this Agreement.

11. Rule of Construction: The language of all parts of this Agreement shall be construed as a whole and according to its fair meaning, and not strictly for or against either party. It is expressly understood and agreed that any rule requiring construction of this Agreement against its drafter shall not be applied in this case. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Agreement.

12. Choice of Law: The Company and the Plaintiff expressly agree that this Agreement shall in all respects be interpreted, enforced, and governed by the laws of the State where Plaintiff worked.

13. Non-Admission of Wrongdoing: Plaintiff and Defendants agree that this Agreement is made solely for the purpose of compromising disputed claims and avoiding the costs and expense of further litigation. Nothing contained herein shall constitute an admission of wrongdoing or liability by either party, which liability is expressly denied.

   a. By entering into this Agreement, the Released Parties in no way admit to any violation of law or any liability whatsoever to Plaintiff or to any other person, all such liability being expressly denied. The Released Parties deny the allegations in the Action and continues to deny that it they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Action.
   b. Settlement of the Action and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of the Released Parties, or of the truth of any of the factual allegations in any and all claims filed against in the Action or otherwise; (b) are not, and shall not be deemed to be, and may not be used as an

4

admission or evidence of fault or omission on the part of the Released Parties in any civil, criminal, administrative or arbitral proceeding.

14. Merger Clause: This Agreement contains the entire understanding between the Parties. The Parties acknowledge that no promise, representation, or warranty whatsoever, expressed or implied, not contained herein, concerning the subject matter of this Agreement has been made by the other party or any of their agents or attorneys to induce execution of this Agreement.

15. Arms' Length Transaction; Materiality of Terms: Each Party hereby warrants, represents, and agrees that in executing this Agreement, such Party: (i) has done so with full knowledge of the rights it may have in respect to the other parties to this Agreement; (ii) has been fully and completely informed as to the contents of this Agreement and has discussed it with its attorneys; (iii) has read this Agreement and understands its terms; (iv) is signing this Agreement as the Party's true and voluntary act and deed; and (vi) Plaintiff further represents and warrants that neither he nor any person claiming by or through him has assigned or transferred, or purported or agreed to assign or transfer, any of the purported claims against Defendants in any way.

16. Additional Documents: Each party agrees to execute such additional documents as necessary, to cooperate with each other and otherwise take such actions as are necessary to accomplish the undertaking set forth in this Agreement.

17. Amendment: No amendment to this Agreement shall be effective unless it is reduced to writing and signed by both Parties. No waiver, modification, or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment. A failure by any party to insist on the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist on the specific performance of any and all of the provisions of this Agreement.

18. This Agreement shall be binding upon and inure to the benefit of the signatory parties and their respective successors, estates, executors, administrators, estate and trust beneficiaries, heirs, and assigns.

19. **Cooperation Between the Parties; Further Acts:** The Parties shall reasonably cooperate with each other in a prompt and timely manner and shall take all necessary steps to effectuate this Agreement.

20. **Counterparts:** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

21. **Facsimile, Email, and Electronic Signatures:** Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email, or electronic signature to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

### D. Plaintiff's Assurances to the Company

This Agreement is a legal document with legal consequences. The Company wants to be certain that Plaintiff fully understand the legal effect of signing this Agreement. Plaintiff, therefore, makes the following assurances to The Company:

1. **I have carefully read the complete Agreement.**
2. **The Agreement is written in language that I understand.**
3. **I understand all of the provisions of this Agreement.**
4. **I enter this Agreement freely and voluntarily. I am under no coercion or duress whatsoever in considering or agreeing to the provisions of this Agreement.**
5. **I understand that this Agreement is a contract. As such, I understand that either Party may enforce it.**
6. **Biller and Kimble, LLC and Gary R. Kessler, P.C. is my legal counsel in this matter. I have no other lawyers in connection with my claims against the Company. I have reviewed this Agreement with my legal counsel prior to signing.**
7. **I am fully satisfied with the terms and conditions of this Agreement.**

### E. Parties' Signatures

We agree.

6

Plaintiff:

_[signature]_

Thomas Philipp-Edmonds

Date: June 5, 2020

Defendants:

_[signature]_

Ahsahn Sheikh    AHSAN SHEIKH
On Behalf of Himself, Individually, and On Behalf of Perfect Pizza Pie, Inc.

Date: 6/10/20

7